458 P.2d 708 (1969)
STATE of Oregon, Respondent,
v.
Robert D. EWERS, Appellant.
Court of Appeals of Oregon, In Banc.
Argued and Submitted July 9, 1969.
Decided September 12, 1969.
*709 J. Marvin Kuhn, Deputy Public Defender, Salem, argued the cause and filed the brief for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.
Ray D. Robinett, Dist. Atty., Hillsboro, argued the cause for respondent. With him on the brief was Gregory E. Milnes, Chief Deputy Dist. Atty., Hillsboro.
BRANCHFIELD, Judge.
Defendant was charged with the crime of obtaining money by false pretenses. The jury found him guilty and he appeals from the sentence imposed by the court.
On July 16, 1967, the defendant approached a clerk in the Villa-Mart Discount Department Store in Beaverton, seeking a refund on two sets of golf clubs. The clerk referred him to the department manager, Mr. Carl H. Ahrens, who checked the contents of the two boxes carried by the defendant and found two sets of golf clubs. The defendant stated that his mother had purchased them for him as a coming home present from Vietnam and that she had made a mistake in the purchase. Mr. Ahrens indicated he would approve the refund and went to the front counter to have the refund slip prepared. When the defendant arrived at the front counter a few minutes later, he also had a Spaulding golf bag with him.
The refund slip was a printed form prepared for use by Villa-Mart. Appearing thereon was the legend "CASH REFUND." In the spaces provided, a clerk wrote in defendant's name and address, the date, a description of the golf clubs and bag and the amounts involved. Under "comments" the clerk also wrote "Welcome home gift. Didn't want to play golf." Mr. Ahrens initialed the slip to indicate his approval of the refund, and the defendant signed it. The defendant was then given the sum of $88.92, which was the value of the items listed on the refund slip.
Ahrens testified that the defendant did not present a sales slip but that sale slips are not absolutely necessary in order to obtain a refund. He said that it was the policy of the company to make refunds but there is a requirement that the person receiving the refund must sign a refund slip.
During a clean-up campaign, a discrepancy was noted, and it was determined that the golf bag had never left the store. The police were notified.
About a month later, after the police had questioned the defendant, he returned to Villa-Mart and requested permission to pay the money back but his offer was not accepted. At that time, the defendant told Ahrens that his mother had not given him the clubs as earlier stated but they were given to him near the toy department on the day he turned them in by a person he refused to identify. Defendant's *710 brief implies his belief that the offer to repay, and its refusal, somehow excuses his conduct. Not so.
"On the principle that the injury is to the state, accused cannot plead that the prosecutor has condoned the crime and settled with accused, * * *." 35 C.J.S. False Pretenses § 37, page 861.
Defendant contends there was error in the overruling of his motion for judgment of acquittal. He asserts a conviction for obtaining money by false pretenses cannot be upheld under ORS 165.205 when the alleged false token was a valid refund slip and was on its face what it purported to be.
The evidence is not sufficient to sustain a conviction under Oregon law where it shows only that a false representation was made, that it is material, that it was intentional, and that the person defrauded relied upon it. ORS 136.560[1] requires proof not only of the false pretense, but also of a false token or writing. The defendant impliedly admits proof of all the elements of the crime except the false token.
The refund slip was the form in general use by the store. The initials of the manager were placed thereon by him, and the defendant signed his own name. All of the handwritten information was placed on the refund slip by an employe of the store. If one looked only at these facts, he would find the refund slip valid. We think, however, there are other essentials to be considered in this case.
In State v. Cody, 116 Or. 509, 518, 241 P. 983 (1925), it was held that a check is a token. The court pointed out that a check is one of the most commonly used tokens in the commission of the crime of obtaining money or goods under false pretenses. A check so used is almost always prepared on the printed form in use by the bank. In State v. Renick, 33 Or. 584, 590, 56 P. 275, 277 (1899), the court adopted the definition of a false token as being "a false mark or sign, forged object, counterfeit letter, key ring, etc., used to deceive persons."
State v. Leonard, 73 Or. 451, 472, 144 P. 113, 144 P. 681 (1914), dealt with an appeal from a conviction under the false pretense statute. Leonard induced an acquaintance to execute a promissory note and mortgage on almost worthless property for the purpose of assisting Leonard in persuading other persons to deed property to him. In furtherance of his scheme, Leonard executed an assignment of the promissory note and mortgage which he had received from his acquaintance. While the note and mortgage were questionable, the assignment was valid. The court said of the assignment:
"* * * While it was not a forgery, we hold that it was false * * *."
The court said that the term "false" signifies "something designedly untrue and deceitful, and implies an intention to perpetrate some treachery or fraud."
The defendant Ewer deceitfully represented that he owned the golf clubs and bag in order to obtain money from the Villa-Mart Discount Department Store. He knowingly supplied the false information which the clerk placed on the refund slip. That statement was false. The refund slip further carried the false implication that defendant owned the golf clubs and bag, and that he was conveying title to them in exchange for title to and possession of the money. A writing which is fictitious in any material way can be a false token or writing. The defendant adopted as his own the refund slip, when he affixed his signature to it. The refund slip was a false token which he intended to, and did, use to perpetrate a fraud.
The judgment is affirmed.
NOTES
[1] Oregon Revised Statutes 136.560

"Upon a trial for having by any false pretense obtained the signature of any person to any written instrument or obtained from any person any valuable thing, no evidence can be admitted of a false pretense expressed orally and unaccompanied by a false token or writing."